(The following reversals are contained in the 3d volume of Denio, not issued until too late to be incorporated in the body of this work.)

WAYDELL and others v. LUER, 3 Denio, 410.

In S. Ct. 5 Hill, 448.

ERROR to the Supreme Court. Luer, plaintiff in error, sued Cort, Waydell and Underhill, in the N. Y. C. P., in assumpsit. The defendants had been partners under the name of N. Cort, & Co., for a year, ending in January, 1838, when they dissolved, and made an assignment for the benefit of their creditors. The trustees not acting, Cort was left in possession of the partnership effects, and acted in the adjustment of its affairs. During the partnership, Luer lent the firm $1,700, for which he took their note, payable 7th of February, 1838. When this note became due, which was after the dissolution, the plaintiff made an adjustment with Cort, of the amount due on the note, and took Cort's *own notes*, two for $500 at nine months, and one for $556 at 4 months, and as the witness who proved the transaction said *he believed*—some *other person's note*, and some money to the amount of over $100; and the plaintiff then gave up to Cort the note of the firm, for the $1,700 above mentioned. Cort was credited on the books of the firm, with the amount of the debt, as though paid by him individually. The notes of Cort, after several renewals and payments, were reduced to $500, in August 1840, when Cort at Luer's instance, gave him a note signed with the name of the firm, payable 7th Feb. 1841, for the amount, which was produced at the trial. There was evidence tending to show that Waydell knew of Cort's notes having been taken for the original debt by the plaintiff.

Upon these facts, the defendants W. and U., Cort having

suffered judgment by default, requested the court to charge the jury that they must determine whether the plaintiff, after the dissolution of the firm, took Cort's own notes, the note of a third party, and a sum of money in *payment of* his debt, and gave up the partnership note; and if he did so, without any reservation of his claim on the other partners that his acceptance of the notes and money, was a discharge and release of the other partners Waydell, and Underhill. But the court, on the contrary, charged the jury that the settlement between Luer and Cort, could not operate to release them except so far as the notes of Cort were paid : that the jury must disregard the settlement, and that the plaintiff was entitled to go back to the original loan, and recover of all the partners the balance remaining unpaid. The jury found accordingly; and the court having confirmed the verdict, error was brought to the Supreme Court, where the judgment of the C. P. was affirmed. Error was then brought to this court.

A written opinion was delivered in favor of reversal by Senator Lott, who states the question as follows : " The material question in this case is, whether a partnership debt can be discharged by the negotiable note of one of the partners given after notice of the dissolution of the partnership, and received by the creditor as payment and in satisfaction." And he held that it was, under the circumstances of this case, and upon the weight of authorities in England and in this state, a complete discharge of the other partners. He maintains that the case of *Arnold* v. *Camp*, 12 Johns. 409, fully sustained that doctrine; and observes that it was cited in *Frisbie* v. *Larned*, 21 Wend. 450, by the very judge who in this case repudiated it. " Indeed," he says, " that case was universally acquiesced in in this state, until 1841, when it was first questioned in the case of *Cole* v. *Sackett*, 1 Hill, 516. I do not deem it necessary to refer to the opinion of judges in England on the point further than to say it was finally held in 1834, in *Thompson* v. *Percival*, 5 Barn. and Adolph. 925, that a partnership debt might, by agreement, be discharged by the acceptance of the sole liability of one of the partners only. He says :

"I am clearly of opinion that the doctrine of *nudum pactum* is not applicable to the present case."

Gardner, president, delivered an oral opinion in favor of reversal upon the grounds taken by Senator Lott.

Porter, senator, delivered a written opinion in favor of affirming the decision of the Supreme Court.

Talcott, senator, delivered an opinion in favor of reversal, but upon an entirely distinct ground from that taken by senator and the president, as to which he dissented, and held with the Supreme Court, that if the note of a third person had not formed a part of the consideration of the agreement or setttlement, that the original liability of the whole firm, would, in that case, have remained unchanged." He says, p. 425:

" 'The proposition which the defendant's counsel desired the court to affirm in its charge, *assumed* that there was evidence tending to show that the note of a third person was transferred by Cort to the plaintiff, on account of the co-partnership debt, upon the adjustment, when he gave his individual notes. There was some evidence to that effect. But the court refused to charge in the manner requested, and on the contrary instructed the jury to disregard the settlement, and that the plaintiff was entitled to go back to the original loan, and recover of all co-partners the balance unpaid. Under the testimony in this case, I think the jury would have been authorized to find that the note of a third party was delivered by Cort to the plaintiff, and that he agreed to accept that and the notes of Cort, and the money, "in settlement," or satisfaction of the partnership debt, and that their note was at the same time given up to be cancelled. If these facts had been so found by the jury, no recovery could have been had against the plaintiff in error.

The judge therefore should have charged as requested upon these points."

Johnson, senator, concurred with these views of Senator Talcott, in a written opinion in favor of reversal. Hand, senator, also concurred substantially with the opinion of Senator Talcott.

The judgment was *reversed*, by a vote of 12 for reversal, and 5 for affirmance.

☞ It would seem clear that this reversal is to be placed on the ground of Senator Talcott, and the question whether such a " settlement," taking the note of one partner only, and delivering up the partnership notes is a discharge of the other partners, must be regarded as still unsettled.

---

NEVIN *v.* LADUE and another, overseers of the poor, &c., 3 Denio, 437—451.

ERROR from the Supreme Court. Ladue and Nelson as overseers of the poor of P. in Putnam county, sued Nevin before a justice of the peace in debt, for the penalty of $25, for " selling strong or spirituous liquors in a less quantity than five gallons at a time, without having a license therefor, contrary to 1 R. S. 680, § 15." The return of the justice states that, " on the trial, the defendant being charged by the plaintiffs with the sale of ale, strong beer, or fermented beer, without a license therefor, confesses the charge in person, and claims it is not prohibited by statute." The justice rendered judgment for the plaintiffs, for the penalty, whereupon the defendant brought a *certiorari* to the C. P., which affirmed, and he then brought error to the Supreme Court.

*Jewett,* J. delivered the opinion of the court, who says :

"If ale or strong beer answers the description of strong or spirituous liquors, the action was well sustained. I am unable to entertain a doubt but that they come within the definition of *strong* or *spirituous* liquor. Both are intoxicating liquors. *Beer* is defined by Webster to be " a spirituous liquor made from farinaceous grain, &c." The manufacture of beer and its use as an intoxicating drink are of very high antiquity. Herodotus tells us that, owing to the want of wine the Egyptians drank fermented from barley. Lib. 2, ch. 77. That the legislature intended by the 15th section to prohibit the sale of all intoxicating liquors, I think is strongly indicated by the provision of the 29th section. It enacts that " No person shall be subject to be prosecuted by virtue of the provisions of this title, for selling metheglin, currant wine, cherry wine or cider." This operates as an